**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:25-cv-20064-KMM

GIORGIO TROVATO and
GIUSEPPE DI CACCAMO JR.,

                   Plaintiffs,

     v.

LARISSA DE MACEDO MACHADO
P/K/A "ANITTA", and
UMG RECORDINGS, INC.,

                   Defendants.

_____/

## UMG'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant UMG Recordings, Inc.
("UMG") moves to dismiss the Second Amended Complaint (ECF No. 35) filed by plaintiffs Giorgio
Trovato and Giuseppe Di Caccamo Jr. ("Plaintiffs").[1]

## INTRODUCTION

The Second Amended Complaint should be dismissed because it does not cure the deficiencies
identified by the Court in its prior Order (ECF No. 33) ("Dismissal Order").

In dismissing the First Amended Complaint, the Court instructed Plaintiffs to make "thorough
and specific factual allegations" regarding the widespread dissemination of Plaintiffs' song, "Sácalo"
("Plaintiffs' Song"). Plaintiffs attempted to meet this standard by alleging that their Song was widely
distributed on "promotional platforms" and played in dance clubs *in the United States in 2007*. But
Anitta is a resident of Brazil who was only 14 years old in 2007. As a result, it would be unreasonable
to presume that: (i) Anitta heard Plaintiffs' Song at a United States dance club in 2007; and (ii) Anitta

---

[1] Plaintiffs still have not served defendant Larissa De Macedo Machado *p/k/a* Anitta ("Anitta").

copied Plaintiffs' Song when she created her hit song, "Funk Rave," in 2023.  This alone is fatal to Plaintiffs' copyright infringement claims.

Plaintiffs' allegations regarding substantial similarity are equally deficient.  The Court rejected the First Amended Complaint's "conclusory" allegations regarding substantial similarity because Plaintiffs made "no factual allegations as to the specific similar elements" of the two songs.  Ignoring the Court's call for specificity, the Second Amended Complaint vaguely alleges substantial similarity with respect to various musical elements without identifying what is original and protectable about them.  The Second Amended Complaint specifically identifies only one similarity between the songs—the repetition of the lyric "sácalo" (Spanish for "take it out") in Plaintiffs' Song and the feminine version of the word, "sácala," in "Funk Rave."  But it is blackletter copyright law that words and short phrases, such as "sácalo," are not copyrightable.  Indeed, Plaintiffs did not create that word and were not the first to use it in a song.  Consequently, Plaintiffs cannot stop Anitta or any other artist from using "sácalo" or "sácala" in their songs.

The Court previously provided Plaintiffs an opportunity to cure these pleading deficiencies.  Given that Plaintiffs were unable—despite clear instructions—to adequately address these deficiencies, it is apparent that any further amendments would be futile.   Accordingly, the Court should, once again, dismiss Plaintiffs' copyright infringement claims—this time with prejudice.

## BACKGROUND

**A.      The Parties**.

Plaintiffs allegedly co-wrote and co-produced Plaintiffs' Song, which was released by the group Erotico in 2007.  (SAC ¶ 10).[2]

---

[2] Although Plaintiffs allege that they registered their Song with the U.S. Copyright Office in *2007* (*see* SAC ¶ 10), the copyright registration attached to the Complaint confirms that Plaintiffs did not register their Song until after "Funk Rave" was released in *2023* (*see* SAC, Ex. A).

Anitta is one of the world's most prominent musical artists and has been referred to as the "Queen of Brazilian Pop," as she has the most songs on the Billboard Hot 100 among all Brazilian female singers. Plaintiffs allege that Anitta is a resident of Brazil. (*Id.* ¶ 4). Plaintiffs additionally allege that Anitta "created" "Funk Rave," which has "over eighty million streams on Spotify" and "won the 'Best Latin Video' award in the 2023 MTV VMAs." (*Id.* ¶ 13).

Plaintiffs further allege that UMG "facilitated its agent's [Anitta's] unauthorized use of the [sic] 'Sácalo' and realized profits through the exploitation of the infringing work 'Funk Rave.'" (*Id.* ¶ 25).

**B.     The Court Dismisses the First Amended Complaint**.

On July 17, 2025, the Court dismissed the First Amended Complaint for failure to adequately allege access and substantial similarity. (*See* Dismissal Order 6-9).

As for access, the Court declined to consider the allegations made by Plaintiff for the first time in their Response, *i.e.* that they "have distributed, sold, and more recently streamed their song across numerous countries." (*Id.* 6). The Court concluded that the First Amended Complaint lacks the "thorough and specific factual allegations that courts—including those in the cases Plaintiffs cite—look to in finding that widespread dissemination has been adequately alleged." (*Id.* 6).

Although Plaintiffs' failure to adequately allege access was "fatal" to their claims, the Court nonetheless analyzed substantial similarity "in an effort to streamline any future amendment." (*Id.* 7). The Court commented that it was "problematic, if not fatal" that Plaintiffs base their substantial similarity claim on two musical elements that courts have "routinely found unprotectable:" (1) a "very common" word in Spanish-language music ( "sácalo"); and (2) rhythm, in which courts are "'hesitant to find originality' … due to the limited number of rhythms generally employed, especially in music in the same genre." (*Id.* 8-9). In any event, the Court determined that the First Amended Complaint's allegations of substantial similarity are "conclusory" because there are "no factual allegations as to

the specific similar elements of the chorus or the original creation of the lyrics, any other elements of the chorus, or the rhythms." (*Id.* 9).  The Court determined that Plaintiffs' allegations do not provide "meaningful notice" and improperly require UMG to engage in "guesswork" regarding the substance of Plaintiffs' allegations.  (*Id.* 10).

Because the Court dismissed the direct copyright infringement claim against Anitta, it also dismissed the derivative claim for vicarious/contributory infringement against UMG.  (*Id.* 10).  The Court dismissed the First Amended Complaint without prejudice and offered Plaintiffs another opportunity to file an amended complaint "address[ing] the aforementioned deficiencies."  (*Id.* 11).

**C.**     **Plaintiffs File the Second Amended Complaint**.

On August 7, 2025, Plaintiffs filed the Second Amended Complaint with the same deficiencies as the First Amended Complaint.

With respect to access, the Second Amended Complaint confirms that, contrary to Plaintiffs' representations (*see* ECF No. 29 at 5), Plaintiffs' Song was ***not*** "sold" "across numerous countries." Now, Plaintiffs allege that their Song was "***nationally*** distributed on ***promotional*** platforms throughout the entire year of 2007."  (*See* SAC ¶ 11) (emphasis added).  Specifically, Plaintiffs allege that their Song was promoted on "*Promo Only*" compilations distributed to "DJs, radio programs, and industry professionals" and that songs contained on these compilations were "spun in dance clubs ***nationwide*."  (*See id*.) (emphasis added).[3]

As for substantial similarity, the Second Amended Complaint vaguely alleges similarity with respect to the "lyrics and chorus" as well as "melodic cadence, hook, and overall structure— particularly in the way they are conveyed," and "structure and delivery … with the rhythm, phrasing,

---

[3] Plaintiffs also allege that their Song was "ranked in the top dance songs of 2007" by DJ Wild Worm. (*See* SAC ¶ 12 & n.1).  However, according to the link supplied by Plaintiffs, DJ Wild Worm did ***not*** rank Plaintiffs' Song among the top 100 dance songs of 2007.  Instead, he recognized Plaintiffs' Song as one of approximately 200 "best of the rest" songs of 2007.

and overall composition." (SAC ¶¶ 14, 16).  Plaintiffs specifically identify only the repetition of the words "sácalo" (in Plaintiffs' Song) and "sácala" (in Funk Rave) as being substantially similar.  (*See id.* ¶ 15).  The Second Amended Complaint includes no specific factual allegations whatsoever regarding the songs' rhythms.

Based on these threadbare allegations, Plaintiffs assert three claims for: (i) direct copyright infringement against Anitta (*see id.* ¶¶ 20-24); (ii) vicarious copyright infringement against UMG (*id.* ¶¶ 25-27); and (iii) contributory copyright infringement against UMG (*id.* ¶¶ 28-31).

## ARGUMENT

**A.     The Court May Analyze Substantial Similarity in Deciding This Motion**.

A motion to dismiss tests whether the complaint "state[s] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In deciding a motion to dismiss, "courts in this Circuit have undertaken a substantial similarity analysis … as long as the alleged similarity is able to be assessed based on a comparison of the undisputed works."  Dismissal Order at 4 (citing *Sieger Suarez Architectural P'ship, Inc. v. Arquitectonica Int'l Corp.*, 998 F. Supp. 2d 1340, 1350 (S.D. Fla. 2014) & *Wooten v. Netflix, Inc.*, No. 1:20-cv-5166, 2021 WL 4864744, at *3 (N.D. Ga. May 25, 2021)).  This is because the "works themselves supersede and control contrary descriptions of them" in the pleadings.  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citations & quotations omitted).  In making a substantial similarity determination, the Court may take judicial notice of certified lyric translations as well as public records of copyright registrations.  Dismissal Order at 4 n.3 (citing *Cortes v. Universal Music Latino*, 477 F. Supp. 3d 1290, 1298 (S.D. Fla. 2020) & *Prof.*

*LED Lighting, Ltd. v. AAdyn Tech., LLC*, 88 F. Supp. 3d 1356, 1370 n.2 (S.D. Fla. 2015)).

**B.      Plaintiffs Fail to State a Claim for Copyright Infringement**.

To establish copyright infringement, Plaintiffs must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns*, *Inc. v. Rural Telephone Serv. Co.*, *Inc.*, 499 U.S. 340, 361 (1991). For the second element, where a "plaintiff does not have direct proof of copying," a plaintiff may satisfy the copying element by adequately pleading: (1) "that the defendants had access to the copyrighted work;" and (2) "that the works are 'substantially similar.'" *Oravec v. Sunny Isles Luxury Ventures*, *L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008) (quoting *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir. 1999)).

As explained below, Plaintiffs' copyright infringement claims should be dismissed because Plaintiffs fail to allege that Anitta had access to Plaintiffs' Song or that the two songs are substantially similar with respect to any original, protectable expression.

**1.      Plaintiffs Fail to Allege Access**.

To sufficiently plead access, a plaintiff must allege that the defendant "had a reasonable possibility of viewing [the work] – speculation, conjecture or bare possibility are not sufficient." *Ross v. Apple*, *Inc.*, 741 F. App'x. 733, 737 (11th Cir. 2018). A "reasonable possibility" of access can be established with "proof that a copyright holder's work was 'widely disseminated.'" *Olem Shoe Corp. v. Washington Shoe Corp.*, 591 F. App'x. 873, 882 (11th Cir. 2015) (citing *L.A. Printex Indus.*, *Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846-47 (9th Cir. 2012). "[F]or a work to be widely disseminated, it must achieve a high degree of commercial success or be readily available ***in the relevant market***." *Loomis v. Cornish*, No. 12-cv-5525, 2013 WL 6044345, at *10 (C.D. Cal. Nov. 13, 2013) (emphasis added). In other words, the work must be disseminated in such a manner "that the defendant can be presumed to have seen or heard it." *Design Basics*, *LLC v. Lexington Homes*, *Inc.*, 858 F.3d 1093, 1100 (7th Cir. 2017).

"In music cases, widespread dissemination has traditionally been demonstrated 'through sales of sheet music, records, and radio performances.'"   *Batts v. Adams*, No. 10-cv-8123, 2011 WL 13217923, at *3 (C.D. Cal. Feb. 8, 2011) (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000)).  For example, works that have topped the Billboard charts or amassed millions of views online have met the "widespread dissemination" standard.  *See Acuff-Rose Music, Inc. v. Jostens, Inc.*, 988 F. Supp. 289 (S.D.N.Y. 1997) (plaintiff's song had a "top five ranking as a country hit"); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 998 (2d Cir 1983) (plaintiff's song was number one on the Billboard charts in the United States); *Gray v. Perry*, No. 2:15-cv-05642, 2018 WL 3954008, at *4 (C.D. Cal. Aug. 13, 2018) (plaintiff's videos amassed nearly four million views online).

A song does not meet the "widespread dissemination" standard simply because it was available for sale or was allegedly commercially successful.  *See Tate Robertson v. Walmart, Inc.*, No. 19-cv-27, 2019 WL 6448960, at *4 (C.D. Cal. May 16, 2019) ("[s]imply because a work is available for sale does not mean that the work has been widely disseminated"); *Meynart-Hanzel v. Turner Broad. Sys.*, No. 17-cv-6308, 2018 WL 4467147, at *6 (N.D. Ill. Sept. 18, 2018) (rejecting plaintiff's claim of commercial success where the complaint failed to detail the alleged breadth of distribution, including the number of views, subscribers or listener metrics).  Additionally, the live performance of music does not establish widespread dissemination unless there is a reasonable possibility that the defendant attended the live performance.  *See Watts v. Butler*, 457 F. App'x 856, 858-59 (11th Cir. 2012) (rejecting contention that defendant may have heard plaintiff's song at venues in Atlanta, including popular nightclubs, because defendant "was only 10 to 14 years old" during the relevant time period and "was ***too young to go to clubs*** where [the song] may have been performed") (emphasis added).; *Apps v. Universal Music Group, Inc.*, No. 2:16-cv-01132, 2018 WL 10455903, at *5 (D. Nev. Apr. 27, 2018) (finding no widespread dissemination where plaintiff performed song at

nightclubs and posted song on YouTube because plaintiff was unable to show how many people came to shows or listened to the song on the internet and plaintiff's song was never played on radio).

A complaint lacking adequate factual support for defendant's alleged access to a song is subject to dismissal. *See Davis v. Raymond*, No. 12-cv-22578, 2012 WL 12868729, at *3 (S.D. Fla. Nov. 30, 2012) (Moreno, J.) (dismissing complaint that alleged "nothing more than 'mere speculation [and] conjecture' regarding Defendants' access"); *Dixon v. Sony Corp. of Am.*, No. 12-cv-60160, 2012 WL 1886550, at *3 (S.D. Fla. May 23, 2012) (Marra, J.) (dismissing complaint that "does not allege any ... specific facts suggesting that Defendant would have had access to his work").

Here, Plaintiffs do not plausibly allege "widespread dissemination" because there is no allegation that the Song was commercially successful. Tellingly, Plaintiffs do not allege that their Song sold any (much less a substantial number of) copies, was played on the radio, charted on Billboard or any other industry charts, or has been widely distributed online. Given that Plaintiffs' Song has garnered less than 1,000 streams on Spotify in the 17 years since its release,[4] it is apparent that the Song has ***not*** been widely disseminated.

Plaintiffs' allegation that their Song was included in a "compilation" that was widely played in United States dance clubs in 2007 (*see* SAC ¶¶ 11-12) is insufficient because it is undisputed that Anitta is a resident of Brazil (*see id.* ¶ 4) and was only 14 years old at the time. As a result, it is unreasonable to presume that Anitta heard Plaintiffs' song at a United States dance club in 2007. Indeed, the Eleventh Circuit rejected a claim of access based on nearly identical facts. *See Watts*, 457 F. App'x at 858-59.

Simply put, it is not plausible that Anitta accessed Plaintiffs' Song. For this reason alone, the

---

[4]  *See*  https://open.spotify.com/track/2JqSGpVtLOBC3gFtkKZcOx?si=91e68f2f36ab4a54.   The Recording Industry Association of America (RIAA), which provides certifications for gold and platinum sales of single recordings and albums, equates 150 streams to the sale of a single record. Thus, 1,000 streams would equal less than seven record sales in 17 years.

Second Amended Complaint should be dismissed.

>    **2.       Plaintiffs Fail to Allege Substantial Similarity**.

Even if Plaintiffs adequately allege access (which they do not), Plaintiffs' copyright claims should still be dismissed because Plaintiffs do not plausibly allege that the two songs are substantially similar.

To merit copyright protection, a work must be independently created by the author and possess a minimal degree of creativity.  *See Feist*, 499 U.S. at 345.  Notably, copyright protection protects only ***original expression***.  *See id.* at 348 (originality is "the *sine qua non* of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author").  This means that "not all copying is copyright infringement," *id.* at 361, and "parrotry does not always mean piracy," *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994).

The Eleventh Circuit applies the "abstraction-filtration-comparison" test, which requires the court to determine substantial similarity between the two works "after dissecting [plaintiff's work] and stripping (or filtering) away the non-protected elements of it."  *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1303 (11th Cir. 2020).  In the music context, "the plaintiff must establish specifically that the allegedly infringing work is substantially similar to the plaintiff's work ***with regard to its protected elements***."  *Linares v. Chirino*, No. 05-cv-21871, 2006 WL 8432038, at *2 (S.D. Fla. Sept. 27, 2006) (emphasis in original) (quoting *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000)).

A general averment of originality is insufficient "because it does not identify what particular elements of the plaintiffs' song are original expressions."  *Id.* at *4.  This is critical because "popular music can share general, common themes which frequently appear in many compositions, and which are not original and entitled to copyright protection."  *Id.*; *see also Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1069 (9th Cir. 2020) (noting that copyright protection does not "extend to 'common or trite'

musical elements" and that "[t]hese building blocks belong in the public domain and cannot be exclusively appropriated by any particular author").

Here, the Court analyzed substantial similarity in its Dismissal Order for the express purpose of "streamlin[ing] any future amendment" and ruled that the First Amended Complaint's allegations regarding substantial similarity were "conclusory" because there were "no factual allegations as to the specific similar elements" of the songs' musical elements.  (Dismissal Order at 7, 9).  Despite the Court's instructions, the Second Amended Complaint still fails to adequately plead substantial similarity.

### a.    The Word "Sácalo" Is Unprotectable.

The Second Amended Complaint specifically identifies only one alleged similarity between the songs—the repetition of the lyric "sácalo" (in Plaintiffs' Song) and "sácala" (in the chorus of "Funk Rave").  (*See* SAC ¶ 15).  This is insufficient to state a claim for relief.

As a threshold matter, the two songs do not even use the same word in the same way.  "Sácalo" and "sácala" both translate to "take it out" in English.  Whereas Plaintiff's Song repeatedly chants the Spanish masculine word "sácal*o*," the chorus of "Funk Rave" includes the feminine version of the word "sácal*a*":

| Plaintiffs' Song – All Lyrics | "Funk Rave" – Chorus |
|---|---|
| Sácalo, chúpalo, tócalo, métalo, mámalo | Písala, chócala, sácala, tómala |
| Sácalo, chúpalo, tócalo | Písala, chócala, sácala, tómala |
| Sácalo, sácalo, sácalo | Písala, chócala, sácala, tómala |
| Sácalo, sácalo, sácalo | Písala, chócala, sácala, tómala |
| Sácalo, sácalo, sácalo | Písala, chócala, sácala, tómala |
| Sácalo, sácalo, sácalo | |
| Sácalo, chúpalo, tócalo, métalo, mámalo | Sá-sácala, tómala |
| Sácalo, chúpalo, tócalo | Sá-sá-sácala, tómala |
| Sácalo, chúpalo, tócalo, métalo, mámalo | Sá-sá-sácala, tómala |
| Sácalo, chúpalo, tócalo | |
| Sácalo, chúpalo, tócalo, métalo, dámelo | |
| Mámalo, chúpalo, tócalo | |
| Sácalo, sácalo, chúpalo, tócalo, mámalo, dámelo | |

(*See* Dismissal Order 4 n.3; ECF No. 25, Request for Judicial Notice ("RJN"), Exs. 1 & 2).

The certified translations of the lyrics confirm that "take it out" has a different meaning in each song, as the "thing" which is being taken out is different.  Plaintiffs' lyrics are vulgar and sexually explicit.  In Plaintiffs' Song, the masculine "it" refers to a part of the male anatomy.  In contrast, in Anitta's lyrics, the "it" is amorphous and not sexually explicit.  The feminine "it" in Anitta's Funk Rave ostensibly refers to dancing or the beat, not a specific sexual act or part of the female anatomy.

| Plaintiffs' Song | Funk Rave |
|---|---|
| Take it out. Suck it. Touch it. | Step on it, hit it, take it out, take it |
| Stick it in. Suck on it. | Step on it, hit it, take it out, take it |
| Take it out. Suck it. Touch it. | Step on it, hit it, take it out, take it |
| Take it out. Take it out. Take it out. | Step on it, hit it, take it out, take it |
| Take it out. Take it out. Take it out. | Step on it, hit it, take it out, take it |
| Take it out. Take it out. Take it out. | Take it, take it out, take it |
| | Take it, take it, take it out, take it |
| | Take it, take it, take it out, take it |

(*Compare* RJN Ex. 1 at 2 *with* RJN Ex. 2 at 4).

In any event, the word "sácalo" is too short, common, and unoriginal to be entitled to copyright protection.  It is well settled that "'[w]ords and short phrases' are not copyrightable."  *Roberts v. Gordy*, No. 13-cv-24700, 2015 WL 12911328, at *3 (S.D. Fla. Sept. 15, 2015) (Williams, J.) (quoting 37 C.F.R. § 202.1(a)); *see also Lil' Joe Wein Music, Inc. v. Jackson*, 245 F. App'x. 873, 879 (11th Cir. 2007) ("a common musical and lyrical phrase that has been use in other prior works" is "unprotectible"); *Woods v. Carter*, 15-9877, 2016 WL 640526, at *3 (N.D. Ill. Feb. 18, 2016) ("If musicians could sue one another for copyright infringement based only on the usage of general words, ... the courts would overflow with copyright infringement suits.").  Indeed, copyright protection does not apply to words and short phrases even if they are spoken in Spanish,[5] repeated

---

[5] *See Cortes*, 477 F. Supp. 3d at 1294, 1297-98 (finding that "despacito" is not protectable as a lyric in the chorus because "it is too short and generic to meet the required threshold for creativity to qualify for copyright protection"); *Guity v. Santos*, No. 18-cv-10387, 2019 WL 6619217, at *4 (S.D.N.Y. Dec. 5, 2019) (finding that phrase "Eres Mia" not protectable as a song lyric or title); *Williams v.*

multiple times in a song,[6] or are used similarly in a song's chorus.[7]

"Sácalo" is a textbook example of a commonplace word that is not entitled to copyright protection.  Plaintiffs did not create the word "sácalo" and are not the first artists to use the word in their song.  In fact, ***before*** Plaintiffs allegedly released Plaintiffs' Song, many other musical artists had already registered copyrights for songs with "sácalo" or "sácala" in their title.  (*See* RJN, Ex. 3). Numerous songs also repeat the words "sácalo" or "sácala" in their choruses:

- Los Diablos Rojos' "Sácalo, Sácalo" (1970) (repeating "Sácalo" 15 times);[8]

- Los Kintos's "Sácalo Sácalo" (1973) (repeating "Sácalo" 30 times)[9]

- Vargas Blues Band's "Chill Out (Sácalo)" (1997) (repeating "Sácalo" 15 times);[10]

---

*Warner/Chappell Music*, No. 07-cv-2683, 2007 WL 9751921, at *2 (C.D. Cal. Sept. 26, 2007) (it is "inconceivable that anyone could copyright a single word or a commonly used short phrase, ***in any language***") (emphasis added).

[6] *See Hobbs v. John*, 722 F.3d 1089, 1096 (7th Cir. 2013) ("Repetition is ubiquitous in popular music."); *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755 (7th Cir. 2016) (affirming dismissal of copyright infringement claim where the two works "make liberal use of repetition – including repeatedly using the word 'never,' as these elements are "rudimentary, commonplace, standard, or unavoidable in popular love songs").

[7] *See Clanton v. UMG Recs., Inc.*, 556 F. Supp. 3d 322, 330 (S.D.N.Y. 2021) (granting motion to dismiss where principal similarity between the two songs was the use of the same expression "I'm just tryin' to make my mama proud," in the chorus of each of the two compositions); *Robinson v. Nayvadius Wilburn, LLC*, No. 21-cv-03585, 2023 WL 5509324, at *3 (N.D. Ill. Aug. 25, 2023) (dismissing copyright infringement claim even though songs similarly used similar phrases in both songs' choruses).

[8] This song has been streamed over 469,000 times.
*See* https://open.spotify.com/track/4NYXhYnWdGMO87EjVuKEcL.

[9] This song has been streamed over 43,500 times.
*See* https://open.spotify.com/track/6pjwnJolD5z41UhLdrPLjw.

[10] This song has been streamed over 700,000 times.
*See* https://open.spotify.com/track/3u82ioZVsP25BiTcEW5Rbg.

- Daddy Yankee's "Sácala" (2005) (repeating "Sácala" 6 times);[11] and

- Ñengo Flow's "Tirale" (2005) (repeating "Sácala" 10 times).[12]

Plaintiffs cannot claim copyright protection over this short, common, and unoriginal word. *See Lil' Joe Wein Music*, 245 F. App'x at 877-79 (denying copyright protection for the phrase "Go ____, it's your birthday" "because it uses a common musical and lyrical phrase that has been used in other prior works"); *Cortes*, 477 F. Supp. at 1294, 1299 (denying copyright protection for common expressions and cliches that had appeared in the lyrics of other popular songs); *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 144 (2d Cir. 1998) (denying copyright protection for "phrases that enjoy a robust existence in the public domain").  Consequently, Plaintiffs cannot stop Anitta or any other artist from using "sácalo" or "sácala" in their songs.

  **b.** **Plaintiffs Fail to Specifically Identify Any Other Musical Elements Entitled to Copyright Protection**.

Plaintiffs' other allegations regarding substantial similarity fare no better.

As noted above, in addition to the lyrics, Plaintiffs opaquely allege substantial similarity with respect to the songs' "melodic cadence, hook, and overall structure—particularly in the way they are conveyed" as well as "structure and delivery … with the rhythm, phrasing, and overall composition." (*See* SAC ¶¶ 14, 16).[13]  While it utilizes different words, the Second Amended Complaint effectively repackages the same claim that this Court already rejected – *i.e.*, that repetition of the lyric "sácalo/a"

---

[11] This song has been streamed over 35,445,000 times.
*See* https://open.spotify.com/track/2rVAYl1QIEqImzWHh0AsYA.

[12] This song has been streamed over 79,000 times.
*See* https://www.youtube.com/watch?v=JnzND_6Fy5o&ab_channel=Ricky40Flow.

[13] Plaintiffs impermissible fail to explain the difference, if any, between the alleged similarities in the songs' "chorus" and "hook."  *See Armour v. Knowles*, 512 F.3d 147, 151 (5th Cir. 2007) (noting that a "hook" is "pop parlance for 'chorus'").

in both songs gives rise to an infringement claim.

The lack of specificity in the Second Amended Complaint is a critical pleading failure. Courts across the country have recognized that copyright protection does not automatically extend to each musical element generally referenced in the Second Amended Complaint. *See*, *e.g.*, *Nwosuocha v. Glover*, No. 21-cv-04047, 2023 WL 2632158, at *7 (S.D.N.Y. March 24, 2023) (denying copyright protection for "vocal cadence" and "structure" of chorus); *Hines v. BMG Rights Mgmt. (US) LLC*, 694 F. Supp.3d 341, 349 (S.D.N.Y. 2023) ("common melodies are unprotectable elements under copyright law"); *Peters v. West*, 692 F.3d 629, 636 (7th Cir. 2012) (denying copyright protection for hook with common rhyme scheme or structure).[14]

Despite this robust case law, Plaintiffs make no effort to explain what is original or copyrightable about their Song's rhythm, hook, melodic cadence, or structure. Plaintiffs' vague reference to rhythm (*see* SAC ¶ 16) is particularly egregious given that the Court's Dismissal Order expressly instructed Plaintiffs to add "factual allegations as to the ***specific*** similar elements of the [songs'] … rhythms." (Dismissal Order at 9) (emphasis added). Without ***specific*** factual allegations, the Court must dismiss the Second Amended Complaint because it cannot filter the non-protected elements and determine whether there is substantial similarity at the level of protected expression. *See Shaheed-Edwards v. Syco Entertainment, Inc.*, No. 17-cv-6579, 2017 WL 6403091, at *3 (C.D. Cal. March 30, 2023) (rejecting allegations that the "the chorus, concept and cadence of the two songs are similar" because these allegations "are merely conclusory and cannot be sustained without more specificity").

---

[14] *See also Cates v. Schlemovitz*, 3:21-cv-00805, 2023 WL 6200196, at *8 (N.D.N.Y. Sept. 22, 2023) (denying copyright protection for unoriginal tempo, melody, and cadence); *Intersong-USA v. CBS*, 757 F. Supp. 274, 282 (S.D.N.Y. Feb. 13, 1991) (denying copyright protection for song's structure, patterns, harmonic progression and recurring eighth note rhythm).

Given that the Court already gave Plaintiffs clear instructions for amending the complaint, Plaintiffs' failure to heed the Court's directive confirms that further amendments would be futile. Moreover, because Plaintiffs' claim for direct copyright infringement against Anitta (Count I) fails as a matter of law, Plaintiffs' claims for vicarious and contributory infringement against UMG (Counts II and III) must likewise fail.  *See*, *e.g.*, Dismissal Order 10 (citing *Klein & Heuchan*, *Inc. v. CoStar Realty Information*, *Inc.*, No. 8:08-cv-1227, 2011 WL 6097980, at *3 (M.D. Fla. Dec. 7, 2011). Accordingly, the Second Amended Complaint should be dismissed in its entirety with prejudice.

## CONCLUSION

For the reasons explained above, UMG respectfully requests that the Court dismiss the Second Amended Complaint with prejudice.

Dated:  August 26, 2025

Respectfully submitted,

**PRYOR CASHMAN LLP**
*Attorneys for UMG*
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone No: (786) 582-3012

By: /s/ *James G. Sammataro*
James G. Sammataro
Florida Bar No. 520292
Brendan S. Everman
Florida Bar No. 68702
jsammataro@pryorcashman.com
beverman@pryorcashman.com
ksuarez@pryorcashman.com