**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-20064-KMM

GIORGIO TROVATO and
GIUSEPPE DI CACCAMO JR.,

    Plaintiffs,

v.

LARISSA DE MACEDO MACHADO
P/K/A "ANITTA" and
UMG RECORDINGS, INC.,

    Defendants.
_____/

## ORDER

THIS CAUSE came before the Court upon Defendant UMG Recordings, Inc.'s ("UMG") Motion to Dismiss Second Amended Complaint.[1] ("Motion" or "Mot.") (ECF No. 43). Plaintiffs Giorgio Trovato and Giuseppe di Caccamo Jr. ("Trovato" and "di Caccamo," and together "Plaintiffs") filed a response. ("Resp.") (ECF No. 45). UMG filed a reply. ("Reply") (ECF No. 48). The Motion is now ripe for review. As set forth below, the Motion is GRANTED.

**I.    BACKGROUND**[2]

At some time in 2006, Plaintiffs co-wrote and co-produced the song "Sácalo" (PA# 2-440-994) ("Plaintiffs' Song"). SAC ¶ 10. That song was released by the group "Erotico" under the label Robbins Entertainment in 2007. *Id.* The SAC alleges that Plaintiff di Caccamo registered

---

[1] Plaintiffs have not served the other named Defendant in this action, Larissa de Macedo Machado p/k/a "Anitta," and therefore this Motion is filed on behalf of the only properly joined Defendant.

[2] The following facts are taken from Plaintiffs' Second Amended Complaint ("SAC") (ECF No. 35) and are accepted as true for purposes of ruling on the Motion. *See MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022). They are construed in a light most favorable to Plaintiffs, the non-moving party.

the same with the U.S. Copyright Office that year, and while the registration attached to the SAC credits the song's first publication as July 24, 2007, the certification of that registration in di Caccamo's name is dated November 1, 2023. *Id.*; SAC Ex. A.  Plaintiffs allege that their song was "nationally distributed on promotional platforms throughout the entire year of 2007," including via "*Promo Only* compilations, including the *Promo Only* Rhythm Club (on or about October 2007) and *Promo Only* Dance Radio (on or about August 2007)," which were "highly respected and popular" platforms within the industry and any songs featured therein "were spun in dance clubs nationwide and heard by hundreds of thousands of listeners." *Id.* ¶ 11.  According to Plaintiffs, their song "continued to be widely circulated . . . across major dance clubs, radio stations, and mix show disc jockeys until it was ranked in the top dance songs of 2007," based on industry-specific metrics. *Id.* ¶ 12 & n.1.

In the fall of 2023, Plaintiffs "discovered" the song "Funk Rave," released by Machado under UMG's label, that won "Best Latin Video" at the 2023 MTV Video Music Awards and has more than eighty million plays on the music-streaming platform Spotify. *Id.* ¶ 13.  Plaintiffs assert that "[n]ot only are the rhythm and chorus of Funk Rave substantially similar, if not identical, to that of [Sácalo], but the melodic cadence, hook, and overall structure—particularly in the way they are conveyed—create a substantial similarity" between their song and Machado's song. *Id.* ¶ 14. Specifically, Plaintiffs explain that the lyrics of Funk Rave "follow both the structure and substance of Plaintiffs' 'Sácalo' lyrics," such that the "hook and melodic cadence" in Funk Rave "follow a structure and delivery that is unmistakably similar . . . , with the rhythm, phrasing, and overall composition of the melody creating a direct parallel between the two songs." *Id.* ¶¶ 15– 16.  Plaintiffs further clarify that because both songs are in the "dance genre," they "share a common musical style that heightens the resemblance in their execution." *Id.* ¶ 16.

Following this discovery, on or about December 1, 2023, Plaintiffs "notified UMG" of "Machado's copyright infringement." *Id.* ¶ 17. Defendants did not respond to this notice and continued publicizing Funk Rave. *Id.* ¶ 18. Plaintiffs asserted one count for copyright infringement and one count for vicarious and contributory liability for copyright infringement. *See generally* (ECF No. 17). The Court dismissed Plaintiffs' Amended Complaint without prejudice for: (1) failure to allege Defendants' access to the copyrighted works and a substantial similarity between the works; (2) failure to allege in the alternative that even without access, the works are "strikingly similar"; (3) failure to allege substantial similarity between the protectable elements of the songs; (4) failure to state a claim for vicarious and contributory copyright infringement due to failure to state a primary infringement; and (5) its shotgun nature in intertwining theories of vicarious and contributory liability. *See generally* (ECF No. 33) (the "Order").

In the SAC, Plaintiffs bring Count I for copyright infringement, Count II for vicarious copyright infringement, and Count III for contributory copyright infringement. *See* SAC ¶¶ 20–31. Now before the Court is UMG's Motion, wherein it moves to dismiss Plaintiffs' SAC with prejudice for failure to state a claim for direct and vicarious and contributory copyright infringement, specifically as to access, substantial similarity, and the protectability of the word sácalo and other identified elements that are shared across songs. *See generally* Mot.

**II.    LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8(a)(2) "is to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (internal citation and quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). This requirement "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and alterations omitted). The court takes the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

A complaint must contain enough facts to plausibly allege the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007). A pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

**III.   DISCUSSION**

UMG argues that the SAC should be dismissed for failure to cure the deficiencies this Court previously identified, specifically that Plaintiffs have failed to allege widespread dissemination of their song as it relates to access as well as substantial similarity.[3] *See generally* Mot. Plaintiffs respond that they have overcome these previous shortcomings by alleging industry

---

[3] For the reasons previously explained, the Court can properly conduct a substantial similarity analysis at this stage that is limited to "an analysis that would not involve a fact-intensive inquiry potentially requiring evidence not currently before the Court" but rather that "is able to be assessed based on a comparison of the undisputed works." Order at 3–5 (collecting cases).

4

dissemination and "hook and melody-centered similarity" between the songs. *See generally* Resp. The Court addresses each of UMG's arguments in turn.

### A. Failure to State a Claim for Copyright Infringement

UMG argues that Plaintiffs still fail to state a claim for copyright infringement because there is no showing that Machado had access to Plaintiffs' Song or that any protectable elements of the songs are substantially similar. *See* Mot. at 6–14. In stating a claim for copyright infringement, a plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Such copying requires a showing of both actual use and that the copied elements are legally protectable. *Morford v. Cattelan,* No. 21-cv-20039, 2022 WL 2466775, at *2 (S.D. Fla. July 6, 2022) (citation omitted). As to the second prong, without evidence of direct copying, a plaintiff can show through indirect evidence either: a defendant's access to the copyrighted works and a substantial similarity between the works; or, without access, that the works are "strikingly similar." *Olem Shoe Corp. v. Wash. Shoe Co.*, No. 09-cv-23494, 2011 WL 6202282, at *14 (S.D. Fla. Dec. 1, 2011) (quoting *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007)).

Substantial similarity may be found where, after "strip[ping] away unprotectable elements," there are sufficient allegations of similarity between protectable elements. *See Morford*, 2022 WL 2466775, at *3; *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1316 (11th Cir. 2010). Striking similarity may be found where the works are so similar in presentation "that the possibility of independent creation, coincidence, and prior common source are, as a practical matter, precluded." *Ross v. Apple, Inc.*, 741 F. App'x 733, 737 (11th Cir. 2018) (citing *Corwin*, 475 F.3d at 1253). Here, Plaintiffs contend they have adequately pled access and

substantial similarity. *See* Resp. at 4–7.

### 1. Access

Pleading access requires an allegation that the defendant had "a reasonable opportunity to view" the subject work. *Corwin*, 475 F.3d at 1253. The emphasis in this inquiry is *reasonable* opportunity, as "speculation, conjecture or 'bare possibility' are not sufficient." *Ross*, 741 F. App'x at 737 (citing *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1250 (11th Cir. 1999)). Such reasonable opportunity to access may be established through factual allegations of an actual opportunity available to a defendant, or through showing the work was "widely disseminated." *Olem Shoe Corp. v. Wash. Shoe Corp.*, 591 F. App'x 873, 882 (11th Cir. 2015); *Kelly Tracht, LLC v. Dazzle Up, LLC*, No. 17-cv-80434, 2017 WL 4681329, at *2 (S.D. Fla. Oct. 18, 2017).

Plaintiffs argue that they have now alleged widespread dissemination through "national distribution" of their song on "'Promo Only' compilations provided to DJs, radio programs, and industry professionals, and that tracks from those compilations 'spun in dance clubs nationwide' in 2007 and were ranked as a 'top dance song' that year." Resp. at 3 (quoting SAC ¶¶ 11–12). UMG points to the fact that Machado was a resident of Brazil and only fourteen years old in 2007. Mot. at 8. In response, Plaintiffs argue that "access could also be established if Defendant's intermediary, such as her songwriters and/or producers, had access to Plaintiffs' work," and that there is a "reasonable inference that any of the writers and/or producers of 'Funk Rave,' such as Thomas Wesley Pentz p/k/a 'Diplo' . . . had access to Plaintiffs' song based on the alleged wide dissemination." Resp. at 4.

As to widespread dissemination, Plaintiffs are correct that the song being available to a defendant in some form is sufficient at the motion to dismiss stage to plausibly allege access, and that whether such access actually took place is an inquiry reserved for the summary judgment

stage. *See* Resp. at 3; *Morford*, 2022 WL 2466775, at *6. Therefore, that Plaintiffs' Song has only been streamed less than 1,000 times in the seventeen years since its release is not fatal at this time. *See* Mot. at 8. However, this more liberal standard is not a carte blanche for Plaintiffs to base their claimed access solely on conclusory or implausible allegations, leading to UMG's next argument that Machado was only fourteen years old and a resident of Brazil at the time Plaintiffs' Song was released. *See id.* The Eleventh Circuit has affirmed a finding of no access where a defendant "was only 10 to 14 years old" during the relevant time period and therefore "too young to go to clubs where [the work] may have been performed." *Watt v. Butler*, 457 F. App'x 856, 859–60 (11th Cir. 2012). While that finding was in a summary judgment context, no further discovery would be necessary for Plaintiffs to allege the facts that the Eleventh Circuit considered in making that determination. *See id.* (discussing number of CDs plaintiff had sold or given away, area where such distribution occurred, number of times work was performed, and residence of all parties during relevant time period). Plaintiffs do not allege such facts here.

Seemingly recognizing that it is unlikely that Machado heard Plaintiffs' Song when she was a fourteen-year-old resident of Brazil, Plaintiffs pivot to their argument that unidentified writers and/or producers of Funk Rave, including Diplo, could have heard the song at the time. Resp. at 4–5. There are several issues with this argument. First, as UMG correctly notes this theory of access appears nowhere in the SAC, and it is improper for Plaintiffs to attempt to raise it for the first time during briefing. *Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011). Plaintiffs raised unpled arguments multiple times in their initial briefing on the Amended Complaint, and the Court made clear that this was impermissible. *See* Order at 7–8.

Second, Diplo is not a party to this action nor do Plaintiffs allege they provided a copy of their song to him or a venue where he was present in the relevant timeframe, nor do they provide

7

enough facts for the Court to determine that copies of the song were handed out to so many clubs or venues as to be ubiquitous.[4] These facts distinguish this case from the cases Plaintiffs cite to support their argument on this point, and other cited cases squarely reject this theory of access on similar facts.[5] *See Ordonez-Dawes v. Turnkey Props., Inc.*, No. 06-cv-60557, 2007 WL 1614515, at *3 (S.D. Fla. Apr. 5, 2007) (holding plaintiffs need not allege exactly how third parties received photographs where plaintiffs personally provided same to named defendants for exclusive use); *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981) (finding access established in context of stuffed animal design infringement where alleged parties used same Korean manufacturers); *Arthur Rutenberg Corp. v. Parrino*, 664 F. Supp. 479, 481 (M.D. Fla. 1987) (finding access established where defendant received brochure containing architectural plan allegedly infringed); *Benson v. Coca-Cola Co.*, 795 F.2d 973, 975 (11th Cir. 1986) (finding evidence of direct access insufficient where party's songwriters were in a position to potentially know of song but "no evidence [they] visited any of the places of performance during the relevant time period" and were not sent song).

Even if this Diplo-based theory of access had been properly pled, which it was not, it would still be conclusory and speculative at best. Plaintiffs base their theory of wide dissemination on the distribution of promotional distribution to "DJs, radio programs, and industry professionals," and not on streaming, but do not allege Diplo is one such recipient, and as discussed above do not provide enough facts for the Court to determine that their song was not only distributed but played

---

[4] UMG also notes that Plaintiffs' Song was not ranked in the top 100 dance songs of 2007 according to Plaintiffs' provided link, but was in the following several hundred "best of the rest" songs of that year. Mot. at 4 n.3.

[5] Many of these cases are also based on theories of actual access by either the defendant or the third party, rather than widespread dissemination as Plaintiffs assert with regard to Diplo. *See, e.g.*, *Benson*, 795 F.2d at 975. Plaintiffs do not allege actual access in the SAC or the Response.

on a widespread basis in the musical markets relevant to Diplo. Resp. at 3. Plaintiffs ask the Court to excuse them from pleading not only how Diplo might have shared Plaintiffs' Song with Machado, but also how Diplo might have accessed it in the first place. Allowing Plaintiffs' claims to proceed on such unsubstantiated and unpled theories would not pass muster under Rule 8, and Plaintiffs do not argue that there is a striking similarity between the songs in the alternative. Accordingly, the Court finds Plaintiffs have failed to adequately allege access in the SAC.

### 2. Substantial Similarity

Although the lack of alleged access is fatal to Plaintiffs' copyright claim as discussed above, the SAC must be dismissed for the independent reason that Plaintiffs have failed to allege substantial similarity. A plaintiff is required to plead substantial similarity between only the protectable elements of different works. *See Morford*, 2022 WL 2466775, at *3. The first determination is whether the elements at issue are protectable. While it is true that at the dismissal stage Plaintiffs need only allege that there is a similarity between potentially protectable elements, in order to prevail Plaintiffs "must identify the specific element of the chorus—be it the harmony, melody, rhythm or some other specific element—that is original to them." *Linares v. Chirino*, No. 05-cv-21871, 2006 WL 8432038, at *3 (S.D. Fla. Sept. 27, 2006).

Plaintiffs acknowledge that the word sácalo or its feminine sácala may not be protectable because it is very common in Spanish-language music. Resp. at 5; *see also Lil' Joe Wein Music, Inc. v. Jackson*, 245 F. App'x 873, 879 (11th Cir. 2007) (collecting cases). Plaintiffs nevertheless argue that "the selection, coordination, and arrangement" of the otherwise unprotectable word is protectable here because the "lyrics and hook" of the songs are substantially similar "in identity, framing, and chorus placement." Resp. at 5. Specifically, Plaintiffs argue that the "same three-syllable Spanish '*sá-ca-lo*' hook" is repeated "in tight succession" in their song while Defendants'

9

song "uses the stuttered hook '*Sa-sa-sácala*,'" and "[i]n terms of framing, both choruses wrap around the hook, creating an A/B call-and-response pattern in the chorus." *Id.* Plaintiffs also explain that "both works place their hook within the chorus rather than appearing only in a verse or bridge," and that in sum the "selection, coordination, and arrangement of the songs' melody and hook (such as the refrain identity/looping, imperative framing, and chorus placement described above)." *Id.*

As an initial matter, Plaintiffs' position on this point is once again substantially unpled, which this Court cautioned against specifically on this issue. *See* Order at 9–10. Plaintiffs allege that the "lyrics and chorus" of the two songs are "substantially similar, if not identical," to those of Plaintiffs' Song. SAC ¶ 14. However, in their Response Plaintiffs do not offer argumentation as to this alleged lyrical similarity, rather conceding that the word in question may not be protectable and moving on to the "specific elements of the hook/chorus, which are the melodic cadence, hook, phrasing, structure, [and] delivery." Resp. at 5. These elements are listed in the SAC. *See* SAC ¶¶ 14, 16. However, UMG is correct that the SAC does not include the more detailed contentions reflected in the Response aside from the foregoing. Reply at 5–6. Plaintiffs have now had three opportunities to develop and allege their theories of substantial similarity based on the existing facts and law, and an opposition to a motion to dismiss should not be a testing ground for new theories already known to Plaintiffs to see whether the Court will proverbially bite before incorporating those theories into a future amended pleading.

Even if these arguments had been properly pled, however, Plaintiffs' theory of substantial similarity suffers from a fundamental failure to allege originality. It is well established that originality is the "*sine qua non* of copyrightability." *Morford*, 2022 WL 2466775, at *5 (quoting *BellSouth Advertising & Publ'g Corp. v. Donnelley Info. Publ'g, Inc.*, 999 F.2d 1436, 1440 (11th

Cir. 1993)). In a situation where the originality is in the arrangement or compilation of otherwise unprotectable elements, as Plaintiffs assert is the case here, the copyright protection is "thin." *Intervest Constr., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 919 (11th Cir. 2008) (quoting *Feist*, 499 U.S. at 349). The Court previously instructed Plaintiffs that they "must identify the specific element of the chorus" that is "original to them." Order at 8 (quoting *Linares*, 2006 WL 8432038, at *3).

Plaintiffs have not done so here. While acknowledging that originality is the required standard, nowhere do Plaintiffs assert that the elements of the chorus they focus on (melodic cadence, hook, phrasing, structure, and delivery) are original to them, instead discussing the alleged similarity of those elements between the two songs. Resp. at 4–5. Plaintiffs also allege that "[b]oth songs, being in the dance genre, share a common musical style that heightens the resemblance in their execution." SAC ¶ 16. This allegation, however, undercuts their position because as noted in the Order, various courts have held that similarity is to be expected within genres where certain themes frequently appear and that this is not inherently infringing without more. *See* Order at 9; *Linares*, 2006 WL 8432038, at *3; *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 (11th Cir. 2002); *Benson*, 795 F.2d at 975 n.2. At bottom, Plaintiffs have failed to allege which elements are their original creation, and attempting to allege similarity is not enough. Accordingly, the Court finds that Plaintiffs fail to allege substantial similarity under Rule 8.

**B. Failure to State a Claim for Vicarious and Contributory Copyright Infringement**

Count I for copyright infringement is only asserted against Machado, who as noted above to the Court's knowledge has not been served in this action. However, Count II for vicarious infringement and Count III for contributory infringement, both asserted against UMG, are derivative claims that necessarily rise and fall with Count I. *See, e.g.*, *Klein & Heuchan, Inc. v.*

*CoStar Realty Information, Inc.*, No. 8:08-cv-1227, 2011 WL 6097980, at *3 (M.D. Fla. Dec. 7, 2011) (explaining "prior finding of direct copyright infringement is a precondition" for contributory and vicarious liability). As the Court finds that Count I for copyright infringement fails, the Court similarly finds that Counts II and III for vicarious and contributory liability fail.

## IV.   CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that UMG's Motion to Dismiss Second Amended Complaint (ECF No. 43) is GRANTED. Because Plaintiffs have already filed three complaints and have once again failed to adequately state their claims despite instruction from this Court, the Second Amended Complaint (ECF No. 35) is DISMISSED WITH PREJUDICE. The Clerk of Court is INSTRUCTED to CLOSE this case. All deadlines, if any, are VACATED, and all pending motions, if any, are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this  20th   day of October, 2025.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record